AMERICAN CREOSOTE WORKS, INC. *v.* ROSE BROS., INC.

Division A. Mar. 19, 1951.

No. 37787 (51 So. (2d) 220)

Neal Prisock, for appellant.

Henry L. Rogers, for appellee.

Lee, J.

American Creosote Works, Inc. sought to recover for damages to its truck on account of a collision with a truck

of Rose Brothers, Inc. Issue was joined, and there was a jury and verdict for the latter. From the judgment entered, the plaintiff in the court below has appealed here.

Appellee made a motion to strike the stenographer's notes of the evidence on the ground that the notice was given a day late. It relies solely on a letter from the court reporter to the circuit clerk, which appears in the record. The substance of the letter was an acknowledgment by the reporter that he had received notice of appeal in this case, "which notice, according to the post mark on the envelope, was a day late."

██ Of course, it is incumbent on any person desiring to appeal his case to this Court to "notify the court reporter in writing within ten days after the adjournment of court of the fact that a copy of the notes is desired" if he wishes to have the benefit of the evidence on appeal. Section 1640, Code of 1942. The giving of such notice is jurisdictional. McGee v. State, 203 Miss. 609, 35 So. (2d) 628; Mayflower Mills v. Breeland, 168 Miss. 207, 149 So. 787; Mississippi State Highway Department v. Haines, 162 Miss. 216, 139 So. 168. And unless given, "the transcript of the evidence filed by the court reporter is of no validity and must be stricken from the record." Shaw v. Bula Cannon Shops, Inc., 205 Miss. 458, 38 So. (2d) 916, 917, and the cases there cited.

But, since the record is here, we think that the above ex parte and hearsay statement is insufficient to justify the striking of the evidence in this record. The motion is, therefore, overruled.

This collision occurred in the Town of Noxapater about 4:30 p. m. on December 3, 1948. Two large trucks were involved. Appellant's truck was loaded with poles, and was bound for Louisville. Appellee's truck was loaded with oil, and expected to make a delivery at Webb's Mill. The trucks had stopped at a signal light. When the green light showed, both started north on Highway 35, with the oil truck ahead. It was about a quarter of a mile to Webb's Mill, which was situated on the east or

right side of the road. The oil truck traveled in the middle of the road. As it neared the mill, it was running slowly. At this juncture, it veered over to the left until the left wheels ran completely off of the pavement. The driver's purpose in so doing was evidently to enable him to make a right turn and pass over a narrow bridge into the mill yard. The driver of the pole truck thought that the oil truck was intending to park or take a road to the left. Inasmuch as he desired to pass, he speeded up his truck in order to pass on the right. Simultaneously the driver of the oil truck began a right turn. The result was that the two trucks collided on the right side of the pavement and shoulder with considerable violence and with great damage to each.

Three witnesses for the appellant testified that the driver of the oil truck gave no sign or warning at all, either that he was going to stop, or turn right or left. Immediately following the collision, the driver of the pole truck said to the driver of the oil truck, "Boy, why in the world didn't you give me a signal you was going to turn into this driveway?" His reply was: "Doc, I didn't know you was back there." This witness also testified that when the patrolman asked the driver of the oil truck if any signal had been given, the driver replied that it was, but that his tie bolt was broken, and the driver of the pole truck didn't see it. The patrolman was introduced as a witness by the appellant and testified to his conversation with the two drivers. He stated that the driver of the oil truck said that he gave a signal, but he did not know whether the man in the other truck saw it because something was out of line on his truck. This witness testified further, without objection, that he told the driver of the oil truck that he should have given a signal, and the other driver that he was following too closely; that he told them that one was as much to blame as the other; and that neither made any response to that statement. The driver of the oil truck was not available and did not testify in the case.

As heretofore stated, the evidence for the appellant showed that the driver of the oil truck gave no signal at all. But that same evidence itself shows that the said driver claimed that he had given a signal. The jury also had the opinion evidence of the patrolman, without objection, that one driver was as much to blame as the other; that one should have given a signal, and the other should not have been so close.

Manifestly the driver of the oil truck was under the duty to give the proper sign for stopping, or turning right or left. Section 8192, Code of 1942. Under the particular circumstances of this case, the driver of the pole truck ought not to have attempted to pass on the right unless the vehicle in front was making, or about to make, a left turn. Section 8184, Code of 1942. Since, according to the appellant's evidence, no sign of a left turn was given, it appears that the jury found that the driver of the pole truck, under the circumstances, should not have attempted to pass. Besides, one truck should not follow another more closely than is reasonable and prudent. Section 8188, Code of 1942.

Appellant complains of several instructions which were given to the appellee. A large number of instructions were given to both sides. They covered the questions of law mentioned above, and other statutory provisions and principles governing negligence and want of care. When these instructions are considered together, one supplementing the other, we think that a fair announcement of the law was given. Cochran v. Peeler, Miss., 47 So. (2d) 806, has some bearing on the legal principles here involved, as well as the necessity for the consideration of all instructions together.

We do not consider the alleged erroneous instruction on the measure of damages, since the verdict was for the appellee. It could not have had any effect on the jury.

Affirmed.